UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 14-09540-AB (JPRx) | Date: | May 14, 2015 |
|---|---|---|---|

| Title | Ellen Catherine Rozario v. Kim Richards |
|---|---|

Present: The Honorable ANDRÉ BIROTTE JR.

| CARLA BADIRIAN | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order Granting Plaintiff's Application for Default Judgment Against Defendant Kim Richards**

On April 21, 2015, Plaintiff, Ellen Catherine Rozario, filed an Application for Default Judgment against Defendant Kim Richards. (Dkt. No. 54.) No opposition was filed in connection with Plaintiff's application. After considering the materials submitted and the case file, the Court hereby **GRANTS** Plaintiff's Application.

## I. BACKGROUND

Plaintiff seeks recovery for the injuries she sustained from Defendant's pit bull named Kingsley. (*See* First Amended Complaint ("FAC"), Dkt. No. 23.)

On March 19, 2014, Plaintiff, Plaintiff's daughter, and Plaintiff's granddaughter visited Defendant at her residence to spend the evening. (*Id*. at ¶ 12.) Defendant's pit bull lives with her. (*Id*. at ¶ 14.) Plaintiff was unaware that Defendant owned a dog before arriving to Defendant's home. (*Id*. at ¶¶ 12, 15.) During the course of the stay, Plaintiff alleges that Defendant "proceeded to make statements and representations to Plaintiff that the dog was a 'sweet, cuddly dog'" and encouraged Plaintiff to scratch the dog behind its ears. (*Id*. at ¶ 15.) The next morning Plaintiff and Defendant were having a conversation in Defendant's bedroom while Defendant laid in bed with her dog. (*Id*. at ¶ 16.) As the two were

1

conversing, the dog, "without provocation…jumped up from the bed, moved across [the bed] and…bit [Plaintiff]" on her right arm and left hand. (*Id.*; Ellen Catherine Rozario Declaration, Dkt. No. 54-2, ¶ 6.) As the dog continued to attack, Plaintiff twisted and fell backwards on the floor, landing on her back with her head between the bed and the dresser. (Rozario Decl., ¶ 7.) As she bled profusely from the dog bites, Plaintiff thought she was going to "bleed[] to death." (*Id.*) After the attack, the paramedics were notified. (FAC, ¶ 16.) However, Defendant "begged Plaintiff, 'not to tell anybody'" because Defendant was fearful that she could lose her job as a cast member on the reality show entitled Real Housewives of Beverly Hills. (*Id.*; FAC, ¶ 16.)

Plaintiff was treated at Sherman Oaks Hospital. (Rozario Decl., ¶ 9.) Plaintiff's injuries included a laceration on her right arm measuring 3.5 cm in length and a laceration on her left hand measuring 3 cm in length. (*Id.* at ¶ 11; Exs. 2(a); 2(b).) Her injuries were treated again in Las Vegas. (Rozario Decl., ¶ 12; Exs. 2(c); 2(d).) Her medical bills total $4083.53. (Rozario Decl., ¶ 19.) Although she incurred permanent scarring and still suffers from back pain and problems with gripping her right hand, Plaintiff healed from her other physical injuries in about two-months. (Rozario Decl., ¶¶ 13, 15.) According to Plaintiff, her mental injuries are ongoing. (*Id.* at ¶¶ 13-14.) Plaintiff claims to be traumatized from the attack and can no longer be in the presence of dogs. (*Id.*)

In light of the events above, Plaintiff initiated this action against Defendant. (Dkt. No. 1; *see also* FAC, Dkt. No. 23.) In her FAC, Plaintiff claims Defendant is liable under a theory of Negligence, Negligence Per Se, Strict Liability, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Fraudulent Concealment.[1] (*Id.*) On March 16, 2015, Plaintiff served the complaint and summons on Chad Doe, Defendant's son, at Defendant's residence. (Dkt. No. 34.) Defendant failed to appear or otherwise respond to the complaint within the time permitted under Federal Rule Civil Procedure ("Rule") 12(a)(1)(A). On April 1, 2015, the Clerk of Court entered default against Defendant. (Dkt. No. 50.) Later that month, Plaintiff filed this application for default judgment. (Dkt. No. 54.)

## II. LEGAL STANDARD

Rule 55(b)(2) governs applications to the Court for a judgment by default. Entry of judgment by default is committed to the Court's discretion. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *See Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A "defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *Pepsico, Inc. v. Cal. Security Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing

---

[1] On April 22, 2015, this Court dismissed the remaining claims of Intentional Misrepresentation and Conspiracy to Misrepresent against Defendant and Defendant Evolution Film & Tape, Inc. (Dkt. No. 56.)

*Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

It is within the discretion of the trial court to determine whether default should be entered. *See Eitel*, 782 F.2d at 1471-72 (9th Cir. 1986). In assessing liability, whether to enter judgment, a court may consider several factors, including, but not limited to: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of dispute concerning material facts; (6) whether the defendants default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

The complaint's allegations are taken as true. *See Danning v. Lavine*, 572 F.2d 1386, 1386 (9th Cir. 1978). When determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. *Id*.

### III. DISCUSSION

Since Defendant has failed to participate in this action, Plaintiff requests that a default judgment be entered against Defendant. (Dkt. No. 54.) Plaintiff has served Defendant with Notice of this Application, thus, satisfying her procedural requirements under Rule 55 and Local Rule 55. (Dkt. No. 55.) In addition, Plaintiff moves for the Court to award $350,000.00 in "unliquidated" damages and $700,000.00 in punitive damages. (*Id*. at p. 4.)

#### A. Default Judgment is Appropriate Under *Eitel*

Several *Eitel* factors weigh in favor of default judgment.

##### 1. Possibility of Prejudice to the Plaintiff

First, Plaintiff will be prejudiced if the default judgment is not entered. *Eitel*, 782 F.2d at 1472. Plaintiff has expended time in attempting to resolve this matter, incurring expenses in attempting to serve Defendant and filing this Default Judgment Application. Despite this, Defendant has failed to respond to the complaint. (Dkt. No. 51.)

##### 2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

Plaintiff's complaint is sufficiently pled and contains merit as to all of her claims except her Intentional Infliction of Emotional Distress allegation. (*See* FAC.) The remaining allegations of Negligence, Negligence Per Se, Strict Liability, Negligent Infliction of Emotional Distress, and Fraudulent Concealment are adequately and factually identified in the

complaint.  (*Id*.)

Plaintiff's negligence claims all "contain[] the traditional elements of duty, breach, causation and damages."  *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 106, 11 Cal. Rptr. 2d 468 (Cal. App.1992).  Her strict liability claim subjects owners of domestic animals (in this case a dog) to liability for the harm caused by the animal's conduct.  *See* Restatement (Second) of Torts § 509.  Her fraudulent concealment claim is established through the suppression of facts that one is bound to disclose.  *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850, 100 Cal. Rptr. 3d 637 (Cal. App. 2009).

While the evidence in this case is scant, the Court must take the factual allegations in the complaint as true.  *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  The causes of action are primarily based on Defendant's representations that Defendant's dog was "sweet" and "cuddly" when in fact the dog had a propensity to bite people.  (Rozario Decl., ¶ 4; FAC ¶ 26.)  Based on Defendant's statements and representations of the dog's sweet behavior, one would be under the impression that the dog would not attack someone, especially unprovoked.  If Defendant knew of the dog's propensity to attack, as Plaintiff alleges, then Defendant should have disclosed this to Plaintiff instead of concealing these facts.  Additionally, the Court would expect Defendant to exercise reasonable care to warn and/or protect overnight visitors in light of the dog's behavior, but Defendant did neither.  To compound her inaction, Defendant also discouraged Plaintiff from contacting the paramedics while Plaintiff profusely bled from the dog bite.  (Dkt. No. 54, p. 6; FAC, ¶ 16)  Plaintiff has also submitted declarations as evidence that demonstrate the extent of her emotional distress that she still experiences because of the dog attack.  (Rozario Decl., ¶¶ 14-18.)  Her emotional distress is essentially comprised of the traumatization she still suffers when she sees or is around other dogs.  (*Id*.)  Plaintiff also detailed the attack, mentioned that she feared for her life, and provided pictures to demonstrate the extent of her injuries.  (*Id*. at ¶¶ 4-10; Exs. 2(a); 2(b); 2(c); 2(d).)  Collectively, Defendant's acts and the resulting injuries could be the kind of conduct that proximately caused Plaintiff's emotional distress.  Lastly, as the alleged owner of this dog, Defendant can be held liable under a theory of strict liability and negligence per se for any injuries from the dog bite.  *See* Los Angeles Municipal Code § 53.33; *see also* Restatement (Second) of Torts § 509.  Taking the forgoing as true, Plaintiff has sufficiently alleged these causes of action.

As for Plaintiff's claim for Intentional Infliction of Emotional Distress, Plaintiff must show: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 n. 7, 233 Cal. Rptr. 308 (Cal. 1987).  Only conduct "exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress" is actionable.  *Id.* (citation omitted).  Here, Defendant's actionable conduct is encouraging Plaintiff to pet the dog, representing the dog as an animal of

"sweet" and "cuddly" behavior, and discouraging Plaintiff from contacting the paramedics following the dog attack. (*See* FAC.) Defendant's conduct seems wrongful but not outrageous under these circumstances. Defendant invited Plaintiff as a guest and proceeded to introduce the dog as a friendly domestic animal. Actions such as greeting house guests and encouraging the petting of a dog are not the types of acts that are intended to cause emotional distress. This conduct rises to the level of wrongful under a theory of negligent infliction of emotional distress, as discussed above, but such acts were not of the type that intended emotional distress. Consequently, the Court finds this claim to be without merit and does not consider it in assessing the requested damages.

### 3. The Sum of Money at Stake and the Possibility of Dispute Concerning the Material Facts

Pursuant to the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of Defendant's conduct. Plaintiff seeks $1,050,000.00. (*See* Dkt. No. 54.) The Court does find this amount excessive when comparing her medical bills which total $4083.53. (Rozario Decl., ¶ 19.) Although factor four does not outweigh the remaining *Eitel* factors, the Court assesses the requested damages more fully below in Section B.

As to the fifth factor, upon an entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See Danning*, 572 F.2d at 1386. This action was initiated in December 2014, (Dkt. No. 1), which demonstrates the fair amount of time Defendant has been given to answer Plaintiff's complaint. She refuses to respond or otherwise deny the allegations against her. Because no dispute is raised regarding Plaintiff's factual allegations and because Plaintiff has provided evidence that clearly supports her claim of Defendant's dog attacking her, the Court finds that this factor favors entry of default judgment.

### 4. The Possibility of Excusable Neglect and the Policy Favoring Decisions on the Merits

Defendant's failure to file a responsive pleading does not appear to have been the result of excusable neglect. Defendant was aware that she was required to file a responsive pleading by no later than March 23, 2015 pursuant to Rule 12(a)(1)(A), but failed to either file a responsive pleading or request an additional time extension. (*See generally* Dkt.) Defendant failed to appear or otherwise respond to the suit, and the clerk entered Defendant's default on April 1, 2015. (Dkt. No. 50.) Since then, Defendant has not notified the Court or tendered any excuse for her continued absence from this case. Consequently, no circumstances suggest that Defendant's failure to appear was due to excusable neglect.

Lastly, granting default judgment will not harm public policy. Policy does favor

decisions on the merits, but in the case at bar, Defendant refuses to litigate this action. In failing to either respond to Plaintiff's complaint or to move to set aside default judgment, Defendant has made deciding this case on the merits virtually impossible for this Court.

On balance, the foregoing *Eitel* factors support entry of Default Judgment against Defendant.

### B. Damages

Default may be entered without a hearing on damages only when the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Here, Plaintiff seeks "unliquidated" damages and punitive damages totaling $1,050,000.00. (*See* Dkt. No. 54.)

### 1. General Damages

Plaintiff seeks "unliquidated" damages (which is an unfixed sum) in the amount of $350,000.00 pursuant to Local Rule 55-2.

Although not clearly specified, the Court construes this request as a request for general damages. *Uva v. Evans*, 83 Cal. App. 3d 356, 365 (Cal. App. 1978) (assessing general damages where the evidence demonstrated that the plaintiff suffered from dog bite injuries). General damages are similar to compensatory damages which is a reward of an appropriate amount that compensates the plaintiff for his loss. *See*, *e.g.*, *Sanchez v. U.S.*, 803 F. Supp. 1066, 1073 (C.D. Cal. 2011); *Crisci v. Security Ins. Co. of New Heaven, Conn.*, 66 Cal.2d 425, 433, 58 Cal. Rptr. 13 (Cal. 1967) ("General rule of damages in tort is that the injured party may recover for all detriment caused…."); *accord Boemio v. Love's Restaurant*, 954 F.Supp. 204, 208 (S.D. Cal. 1997) (In comparing California's Unruh Civil Rights Act with tort claims, the Court stated "[a]ctual damages means compensatory damages that include… general damages for emotional distress.")

Generally, a default judgment must be supported by specific allegations as to the *exact* amount of damages in order to provide defendants notice for the amount sought. *See Hupp v. Jones*, 474 F. App'x 601, 602 (9th Cir. 2012) (emphasis added). But Plaintiff's tort claims are not easily ascertainable at the default stage, especially her emotional distress claims.[2] *Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991).

---

[2] "There is little case law in the Ninth Circuit regarding how to evaluate whether the amount of damages claimed for emotional distress is reasonably proportional to the harm at the default judgment stage." *Brantley v. Boyd*, No. C 07-6139 MMC, 2013 WL 3766911, at *8 (N.D. Cal. 2013). "District courts to have considered the issue, particularly those in the Eastern District of California, have adopted the approach used

These claims are difficult to measure, and it would be in Plaintiff's benefit to provide more evidence then what is before the Court. Plaintiff has only provided a declaration and several pictures in proving up her damages. The only ascertainable amount Plaintiff submitted in her declaration was her medical bills which total $4083.53. (Rozario Decl., ¶ 19.) Plaintiff has not submitted any medical bills that could support this statement. Plaintiff declares that it took her two months to recover from her injuries, (*Id*. at ¶ 13), but she does not shed light on any economic loss that may have occurred over that two-month span. Plaintiff also claims to still suffer from back pain and currently has problems gripping her right hand. (*Id*. at ¶¶ 15-16.) However, there are no medical files or declarations from her physician with regard to these ongoing injuries. Considering only Plaintiff's statements and the attached exhibits, general damages should still account for Plaintiff's past and ongoing physical injuries.

With respect to Plaintiff's emotional distress, Plaintiff claims to have a fear of dogs that she did not have prior to this incident. (*Id*. at ¶ 14.) The extent of her emotional distress is only evidenced in her declarations. She has not provided evidence of any therapeutic counseling nor has she cited any other remedial measures she has taken to address these newfound fears. Although not easily ascertainable, such emotional distress should still be accounted for evaluating Plaintiff's general damages.

Thus, considering the evidence Plaintiff has set forth, general damages are warranted. As such, the Court exercises its discretion in awarding Plaintiff $8,083.53 in general damages.

### 2. Punitive Damages

Plaintiff seeks punitive damages under California Civil Code §§ 3294(b), (c)(3). Plaintiff asserts that punitive damages equal to two times her requested "unliquidated" damages, $700,000.00. (Dkt. No. 54, p. 4.)

California Civil Code § 3294 permits punitive damages "[i]n an action for the breach of

---

by courts in the Second Circuit and compare the damages sought in default judgment to jury awards in similar cases. *Id*. (citing *Hernandez v. Madrigal*, Case No. 09–cv–0413 MCE (GGH), 2011 WL 6936364 (E.D. Cal. Dec. 30, 2011); *Esco Marine Inc. v. SS PACIFIC STAR*, Case No. 11–cv–1353 KJM (GGH), 2011 WL 4852272 (E.D. Cal. Oct. 11, 2011); *F.T.C. v. Hope for Car Owners*, Case No. 12–cv–0778 GEB (EFB), 2013 WL 322895 (E.D. Cal. Jan. 24, 2013)).

In light of the above, the Court uses dog bite cases such as *Uva v. Evans*, 83 Cal. App. 3d 356, 365 (Cal. App. 1978) (determining that $30,000 in general damages was excessive) and *Smythe v. Schacht*, 93 Cal. App. 2d 315, 323-25 (Cal. App. 1949) (concluding that $1,500 award was not excessive) as guideposts in evaluating the emotional damages for the case herein.

7

an obligation not arising from contract where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" against the plaintiff. *Id*. Fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property... or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). "In order to determine whether punitive damages should be awarded, the [c]ourt considers: (1) the nature of defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant." *Prof"l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir. 1984). In determining whether punitive damages are appropriate, the court "cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition." *Id*.

In this case, Plaintiff seeks punitive damages based on Defendant's fraudulent concealment of the dog's propensity to bite people. But Plaintiff has not presented any evidence regarding Defendant's wealth to justify an award of punitive damages. (*See generally* Dkt. No. 54.) Without adequate evidence of Defendant's wealth or net worth, the Court "does not have a sufficient basis to determine the appropriateness of punitive damages." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1011 (N.D. Cal. 2001) (holding that the evidence did not adequately establish defendant's wealth and declining to award punitive damages without knowing the proportionality of an award) (internal citations omitted). Therefore, based on the lack of evidence in the record and the insufficient information presented to the Court regarding Defendant's wealth from which to base such an award, the Court declines to award punitive damages.

Lastly, Plaintiff fails to submit any evidence or argument in support of attorney's fees and costs and appears to have abandoned her claim in this regard**.**

## IV.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Plaintiff's Application for Default Judgment. Defendant is **ORDERED**:

1. To remit payment of $8,083.53 in general damages to Plaintiff.

A judgment in favor of Plaintiff Ellen Catherine Rozario and against Defendant Kim Richards should be entered for general damages in the amount of $8,083.53. Plaintiff shall file and lodge a proposed judgment within ten (10) days of the issuance of this Order.

**IT IS SO ORDERED.**